**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY DAVISON, | NO. CV 04-00763 MAN |
|         Plaintiff, | |
|   v. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration, | |
|         Defendant. | |

Plaintiff filed a Complaint on February 6, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of her claim for supplemental security income benefits ("SSI"). On April 2, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on September 22, 2004, in which: Plaintiff seeks an order reversing the Commissioner's decision and remanding for the payment of benefits; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her latest application for SSI on March 21, 2002.[1] (Administrative Record ("A.R.") 299-302.) Plaintiff claims to have been disabled since January 21, 1999, due to cirrhosis of the liver, hepatitis C, and bronchitis. (A.R. 299, 308.) Plaintiff has past relevant experience as a restaurant and bar waitress, motel housekeeper, packing shed worker, and packer. (A.R. 15, 97.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On July 8, 2003, Plaintiff appeared and testified at a hearing before Administrative Law Judge Rocklin D. Lyons ("ALJ"), at which she was represented by counsel. (A.R. 47-65.) In an August 27, 2003 decision, the ALJ found that Plaintiff was not disabled. The Appeals Council subsequently denied Plaintiff's request for review. (A.R. 11-19, 6-8.)

### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

**A.    The Medical Evidence**

The parties have stipulated that the ALJ, in his decision, fairly

---

[1]    Plaintiff has filed several prior applications for benefits with the Social Security Administration. She was previously awarded and received benefits from July 1993, to January 1997, when those benefits were terminated pursuant to Public Law 104-121. (A.R. 14.) Plaintiff filed an application for benefits on March 4, 1999, which was appealed to the administrative hearing level and denied in an August 11, 2000 decision by Administrative Law Judge David E. Flierl. On February 2, 2001, after considering additional evidence, the Appeals Council denied review. (A.R. 14-15, 31-39, 90-94, 267-74, 279-88.)

and accurately summarized the relevant medical evidence of record (Joint Stip. at 3), which includes the following:

Plaintiff has received treatment at the Kern Medical Center since 1994. (A.R. 136-76, 179-266, 340-52, 368-70.) The records pertinent to her current claimed impairments -- alleged to have an onset date of January 21, 1999 -- reflect that, in a January 12, 1999 report, Dr. Kourosh Laaly diagnosed Plaintiff with chronic bronchitis and a history of intravenous drug use, and referred Plaintiff for hepatitis testing. (A.R. 154.) A January 26, 1999 laboratory report indicates that Plaintiff tested positive for hepatitis C. (A.R. 134, 138.) A December 22, 1999 test confirmed that Plaintiff had hepatitis C. (A.R. 191.) Clinic records from 1999, 2001, and 2002 note that Plaintiff had hepatitis C. (A.R. 137, 140, 195, 341, 344, 349-51.) A March 22, 2002 hepatic ultrasound revealed a "normal examination," and no ascites were found. (A.R. 348.) In clinic records dated March 19, 2002, and June 4, 2002, Plaintiff was observed to have jaundice and spider nevi. (A.R. 344, 349.) Those same records show that Plaintiff has a history of tobacco abuse and smoking since she was 12 years old, and a cough related to her smoking. (*Id.*)

On July 29, 2002, Dr. Tomas B. Rios, a consulting physician, performed a comprehensive internal medical examination of plaintiff. (A.R. 336-39.) Dr. Rios noted Plaintiff's complaints of hepatitis C, bronchitis, and chronic pain in both feet. (A.R. 336.) He concluded that Plaintiff's claimed bronchitis, instead, was reactive airway disease intermittent in presentation, and that her claimed foot pain

3

1  suggested plantar fasciitis.[2]   (A.R. 339.)   Dr. Rios observed that
2  Plaintiff did not appear to be in any acute distress and moved without
3  gait alteration.    Her feet had well-defined arches without any
4  tenderness on palpatory examination.   Dr. Rios found no pathologic sway,
5  and Plaintiff was able to execute normal tandem walk and heel-toe walk.
6  Her grip strength was adequate and strong, and she had normal muscle
7  strength, bulk, and tone.    Plaintiff's lungs were clear to both
8  percussion and auscultation.   Dr. Rios discerned no wheezing, rales,
9  egophony, or adventitious sounds.   Plaintiff's chest expansion was even,
10 and there was no retraction or use of accessory muscles for respiration.
11 His examination of Plaintiff's abdomen revealed no ascites,
12 tremulousness, or asterixis, although Plaintiff had some slight
13 tenderness in the right upper quadrant to palpation.   No clubbing of
14 fingers or cyanosis was observed.   (A.R. 337-38.)

15

16     Dr. Rios opined that Plaintiff's assertion of labor restricting
17 complications based on her hepatitis C was not corroborated by his
18 examination.[3]   He opined that, while she might have plantar fasciitis,
19 this appeared to be clinically controlled, given the lack of tenderness
20 and gait alteration.    With respect to Plaintiff's reactive airway
21 disease, Dr. Rios noted its intermittent nature and the lack of

22 ─────────────
23     [2]   Plantar facsiitis is an "inflammation of the plantar fascia
   causing foot or heel pain." STEDMANS MEDICAL DICTIONARY (27th ed. 2000).

24     [3]   Dr. Rios noted:
25
26     There is no stigmata of any significant liver compromise noted
       on today's presentation.  The sclerae are anicteric.  There is
       no gross organomegaly, and no evidence of portal hypertension.
27     There is no asterixis or tremulousness suggestive of early
       encephalopathy.

28 (A.R. 339.)

significant chronic hypoxic state.  He concluded that, based on the latter, Plaintiff "should be precluded from working in an enclosed environment where there is frequent exposure to smoke, dust or fumes that could exacerbate her underlying reactive airway disease," but found no further limitations based on Plaintiff's alleged symptoms arising from her hepatitis C and chronic foot pain.  (A.R. 339.)

In a December 5, 2002 Physical Capacities Evaluation, Dr. Sandra Gordon of Kern Medical Center found that Plaintiff:  can continuously sit for one and one-half to two hours; can continuously walk and stand for two to three hours; can stand and walk for "minimal time" and sit for a total of one and one-half to two hours in an eight-hour workday; needs to change positions often to relieve pain; needs to lie down periodically through the day to relieve pain; can lift and carry 15 pounds; and is unable to sit at a desk with her head in a forward flexed position for long periods of time.  (A.R. 365.)  Dr. Gordon also noted that Plaintiff's pain was "moderate," which the evaluation defined as "[c]ould be tolerated but would cause marked hardship in the performance of the activity which precipitates the pain; would restrict ability to maintain concentration."  (*Id.*)  In a corresponding December 5, 2002 note, Dr. Gordon noted that "[Plaintiff] remains unable to work for at least one year due to her chronic medical problems."  (A.R. 366.)

In a Physical Residual Functional Capacity Assessment dated August 23, 2002, Dr. Aurthur Jing, a state agency physician, found that Plaintiff was capable of performing work at the "light" level and could stand, walk, and/or sit about six hours in an eight-hour workday, and should be limited from concentrated exposure to fumes, odors, dusts,

1  gases, and poor ventilation.[4]  (A.R. 353-60.)

2

3  **B.    The ALJ's Decision**

4

5      At the July 8, 2003 hearing, the ALJ elicited testimony from

6  Plaintiff, who was represented by counsel, regarding her claimed

7  impairments.  (A.R. 47-65.)  That testimony is discussed *infra*.

8

9      In his August 27, 2003 decision, the ALJ found that Plaintiff had

10  not engaged in substantial gainful activity since her alleged onset

11  date.  (A.R. 18.)  He found that Plaintiff has "severe" impairments of

12  hepatitis C and airway disease, but does not have an impairment or

13  combination of impairments listed in or medically equal to one listed in

14  Appendix 1, Subpart P, Regulations No. 4.  (A.R. 15, 18.)  The ALJ found

15  that "[Plaintiff's] allegations regarding her limitations are not

16  totally credible for the reasons set forth in the body of the decision."

17  (A.R. 18.)  He found that Plaintiff retained the residual functional

18  capacity to perform "light" work with no exposure to dust and chemicals,

19  and could perform her past relevant work as a packer.  (*Id.*)  Thus, the

20  ALJ concluded that Plaintiff was not disabled.  (A.R. 17-19.)

21

22                        **STANDARD OF REVIEW**

23

24      This Court reviews the Commissioner's decision to determine

25  whether it is free from legal error and supported by substantial

26  _____

27      [4]    "Light work" involves "lifting no more than 20 pounds at a
28  time with frequent lifting or carrying of objects weighing up to 10
   pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
Commissioner's decision must stand if it is supported by substantial
evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>,
94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
mere scintilla but less than a preponderance -- it is such relevant
evidence that a reasonable mind might accept as adequate to support the
conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of
the Commissioner, this Court nonetheless must review the record as a
whole, "weighing both the evidence that supports and the evidence that
detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Secretary
of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
<u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
responsible for determining credibility, resolving conflicts in medical
testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d
1035, 1039-40 (9th Cir. 1995).  This Court must uphold the
Commissioner's decision if it is supported by substantial evidence and
free from legal error, even when the record reasonably supports more
than one rational interpretation of the evidence.  *Id*. at 1041; *see also*
<u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d
595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th
Cir. 1995).

**DISCUSSION**

Plaintiff raises one disputed issue, namely, her contention that
the ALJ failed to provide clear and convincing reasons to reject her

subjective symptom testimony.  (Joint Stip. at 4.)

A.   The Governing Law

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to her subjective symptoms alleged to stem from that impairment merely because they are not corroborated by objective evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1985).  As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.  But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ is not required to believe every subjective claim of disabling pain or other symptoms.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994); Fair, 885 F.2d at 803.  In deciding whether to accept

a claimant's subjective symptom testimony, the ALJ must perform a two-step analysis.  First, under the standard set forth in Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986), which the Ninth Circuit reaffirmed *en banc* in Bunnell, 947 F.2d at 345, a claimant must produce objective medical evidence of an impairment or impairments, and must show that the impairment or combination of impairments could reasonably be expected to produce the pain or other symptoms.  Smolen, 80 F.3d at 1281-1281; Bunnell, 947 F.2d at 344.  If the Cotten standard is met by the claimant and there is no evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of her symptoms only by providing specific and convincing reasons for doing so, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony.  Smolen, 80 F.3d at 1281; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Light, 119 F.3d at 792.

In making a credibility determination, the ALJ may use ordinary techniques of credibility evaluation, including inconsistent prior statements or other testimony which is less than candid.  Fair, 885 F.2d at 604 n.5.  The ALJ may consider the claimant's daily activities, work record, and observations from physicians and third parties regarding the symptoms, as well as inconsistencies between the testimony and conduct and unexplained or inadequately explained failures to seek or follow prescribed treatment.  Smolen, 80 F.3d at 1284; Fair, 885 F.2d at 603-604.  Under Social Security Ruling 96-7p, the following factors also may be considered in evaluating the credibility of a claimant's subjective pain testimony:  the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and

aggravate the symptoms; the type, dosage, effectiveness, and side effects of medication taken for pain or other symptoms; treatment aside from medication that the individual receives or has received to alleviate pain or symptoms; and any other factors concerning the individual's functional limitations due to pain or symptoms.

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Oreteza</u>, 50 F.3d at 750 (the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

B.   <u>Plaintiff's Testimony And The ALJ's Findings</u>

At the hearing, Plaintiff testified, in relevant part, that she is disabled because she has "pain" and cirrhosis. (A.R. 51.) When asked by the ALJ how the cirrhosis affects her daily activities, Plaintiff testified that she "can barely bend over" due to pain in her right side and "can't really walk" more than a mile. She testified that her left foot swells periodically, which interferes with her ability to walk. (A.R. 55.) Plaintiff noted "the spiders" all over her arms and legs, which she stated were caused by cirrhosis. (A.R. 59.)

10

Plaintiff testified that she is in constant pain.  She understands that this pain is caused by the expansion of her liver is expanding and the swelling of the related area in her chest.  Although she takes medications, she does not have any side effects from them.  (A.R. 59-60.)  When asked about her daily activities, Plaintiff described them as "laying down" most of the day, elevating her left leg, and playing solitaire.  She goes to church once in a while, but has to stand up and walk during the service.  She does not go to movies, visit friends, exercise, or engage in any hobbies or sports.  (A.R. 55, 60-62.)  Her friend, with whom she lives, does not allow her to help with housework or cooking because of her illness.  (A.R. 55.)  Plaintiff testified that she can:  lift and carry up to ten pounds without pain; walk two blocks; stand two hours at a time; sit no more than an hour without irritation; and grab things without difficulty.  She is most comfortable laying down, and cannot kneel, stoop, or squat without pain.  (A.R. 61-62.)  Plaintiff testified that she cannot perform even simple jobs, because her liver pain prevents her from sitting for very long.  (A.R. 63.)

Plaintiff testified that she understands she is to have a liver biopsy, and needs to remind her doctor about it.  She understands that she was going to be put on Interferon for her hepatitis C, but believes this did not occur because Kern Medical Center "ran out."  (A.R. 54, 63.)

Plaintiff testified that she is treated by Dr. Cha and previously was treated by Dr. Aung.  She has never been treated by Dr. Gordon, but "guesses" that Dr. Gordon may supervise other doctors at Kern Medical Center.  Dr. Gordon has been present in one or more examinations.  (A.R.

52-53, 57.)

Plaintiff was sent to prison in 1991 for possession of heroin.  She testified that she has not used drugs since then.  (A.R. 58.)

The ALJ noted the above testimony by Plaintiff (A.R. 16-17) and concluded that it was not "totally credible" (A.R. 18), stating:

> I conclude there have been no new severe impairments
> established in the record since August 11, 2000.  I do not
> find the claimant's testimony wholly credible.  I note a
> prior history of substance abuse and prison placement for
> possession of heroin.  Although she alleged disability based
> upon chronic foot pain, there was no tenderness and gait was
> within normal limits without the need for an assistive
> device.  Accordingly, this impairment imposes no significant
> work-related limitation of function.  While [Plaintiff] has
> a history of Hepatitis C, there are no stigmata of any
> significant liver compromise.  There was no gross
> organomegaly, evidence of portal hypertension, ascites or
> tremulousness.  At the time of the prior hearing decision,
> [Plaintiff] was not on interferon treatment.  Currently, she
> is not receiving such treatment.  Hepatic ultrasound was
> within normal limits.  Although she has reactive airway
> disease, the lungs were clear to auscultation and percussion.
> There was no evidence of chronic hypoxic state.  Since August
> 11, 2000, [Plaintiff] has not undergone a pulmonary function
> study to evaluate impairment severity.  Remarkably, she

12

continues to smoke cigarettes.  She could not work in an
environment containing dust and chemicals.  Even though she
asserted she spends most of her time resting and reclining
about her home, these complaints and restrictions were
uncorroborated by the medical treatment to date.  The record
shows that [Plaintiff's] lack of daily activities is more of
a volitional nature than actually due to a medical cause.  To
the extent [Plaintiff] alleged debilitating pain and symptoms
that would preclude all activity, her testimony was
unconvincing and unpersuasive.

(A.R. 17.)

The ALJ noted his duty to consider statements from acceptable
medical sources "which reflect judgments about the nature and severity
of the impairments and resulting limitations." (A.R. 17.) He rejected
Dr. Gordon's opinion that Plaintiff is completely disabled and cannot
work, noting that her "conclusion is not supported by treatment notes or
objective tests, and is based on unsubstantiated subjective statements
of claimant." (A.R. 16.)  The ALJ further noted: "according to
claimant's testimony, Dr. Gordon was in the examining room only once";
and "[h]er opinion is not consistent with or supported by the medical
evidence of record." (*Id.*) The ALJ stated that, instead, he was giving
"great weight" to Dr. Rios's opinion, "who concluded claimant was only
precluded from working in an environment containing pulmonary
irritants." (A.R. 17.)

///
///

13

1        C.    <u>No Reversible Error Was Committed</u>.

2

3        Plaintiff argues that the ALJ erred at the second step of the

4    subjective symptom testimony analysis, because he assertedly found

5    Plaintiff's testimony not fully credible on the basis that the objective

6    evidence did not support the *degree* of pain that she alleged. (Joint

7    Stip. at 5, 10.)   Defendant argues that the ALJ correctly utilized

8    various of the valid factors for credibility assessment in reaching his

9    conclusion that Plaintiff's subjective symptom testimony was not wholly

10   credible.  (Joint Stip. at 7-8.)[5]

11

12       Here, the ALJ determined that Plaintiff suffered from hepatitis C

13   and airway disease, conditions that could result in some pain.  The ALJ

14   did not find Plaintiff's testimony to lack credibility *in toto*; rather,

15   he found that her testimony that her pain "would preclude all activity"

16   to be "unconvincing and unpersuasive." (A.R. 17.)   The Court concludes

17   that, in so finding, the ALJ did not commit error.

18

19       With respect to Plaintiff's allegedly disabling bronchitis, the ALJ

20   found, based on the medical evidence, that Plaintiff had airway disease,

21   rather than bronchitis.   (A.R. 15.)   Plaintiff does not dispute this

22   finding, and it is supported by the record.[6]   The ALJ did not find

23   ───────────────────────

24       [5]    The parties devote a substantial portion of their briefing
     arguing, in the abstract, about the law regarding the use of *post*
25   *hoc* rationales to support a decision of the Commissioner. (Joint Stip.
     at 5-6, 8-10.)  As Defendant has not proffered any *post hoc* rationales
26   in this case, the parties' arguments about this issue are irrelevant.

27       [6]    As discussed earlier, Dr. Rios reached this conclusion after
     examining Plaintiff in July 2002.  Plaintiff's records from Kern Medical
28   Center do not reveal any diagnosis of bronchitis during the relevant
     period of time and instead, reveal her treating doctors' ongoing concern

Plaintiff's contention in her application[7] -- that this condition rendered her unable to work -- to be entirely credible, because the objective medical evidence showed that:  Plaintiff's lung fields were clear to precussion and auscultation; her chest expansion was even; no retraction or use of accessory muscles for respiration, or wheezing, rales, or egophony, were observed; there was no evidence of a chronic hypoxic state; and Plaintiff had not undergone a pulmonary function study during the relevant period.  Moreover, as the ALJ noted, notwithstanding this asserted disability, Plaintiff continued to smoke.  (A.R. 16-17.)

These factors -- namely, medical observations about the claimed symptoms, the nature of treatment, and inconsistency between a claim of disability and the claimant's conduct -- were valid factors for the ALJ to use in assessing Plaintiff's credibility.  *See, e.g.,* Smolen, 80 F.3d at 1284 (observations from physicians regarding the symptoms and inconsistencies between conduct and claimed disability are proper bases for assessing credibility); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(an ALJ may consider the conservative nature of treatment to suggest a lower level of pain and functional limitation than that alleged by claimant); and Fair, 885 F.2d at 604 (claim of disabling pain may be discredited by evidence of minimal medical treatment).

---

about her smoking and "tobacco abuse" and their desire that she stop smoking.  (*See, e.g.,* A.R. 145, 195, 204, 218, 346, 349.)

[7]    Significantly, in her hearing testimony, when asked what causes her to be disabled, Plaintiff did not state that her alleged bronchitis plays any role in her claimed inability to work.  Rather, she claimed to be unable to work due to "constant pain" due to her swollen left foot and in her liver area (due to her "cirrhosis").  (A.R. 51, 55, 59-63.)

Additionally, the ALJ stated specific and convincing reasons for concluding that, with the limitation that Plaintiff should not be frequently exposed to smoke, dust or fumes, Plaintiff's impairment would not preclude her from working.  Dr. Rios, who examined Plaintiff, opined that such a limitation was needed.  The ALJ expressly noted that he was giving great weight to Dr. Rios's opinion,

The ALJ rejected Dr. Gordon's contrary opinion that Plaintiff is disabled and unable to work.  The ALJ did so on the basis that Dr. Gordon's conclusion was not supported by treatment notes or objective tests, was based on Plaintiff's subjective statements, and was not consistent with or supported by the remaining medical evidence, and because, according to Plaintiff, Dr, Gordon did not treat her and "was in the examining room only once."  (A.R. 16-17.)  Even assuming, *arguendo*, that Dr. Gordon might be deemed to be a treating physician,[8] these are specific and legitimate reasons for rejecting her opinion, and favoring Dr. Rios's opinion instead.  *See* <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019-20 (9th Cir. 1992)(treating physician opinion that is brief, conclusory, and unsupported by clinical findings may be rejected); <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1339-40 (9th Cir. 1998)(treating

---

[8]    As discussed above, based on Plaintiff's testimony, it appears that Dr. Gordon never examined Plaintiff and, at most, may have supervised Plaintiff's treating physicians.  If, in fact, she supervised Drs. Cha and Aung, Plaintiff's treating physicians, and consulted with them about Plaintiff's treatment, she might be deemed to be a treating physician.  *See* <u>Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996).  However, the record does not clearly establish that she did so.  Moreover, and more importantly, her single-page fill-in-the-blanks/box-checking capacities evaluation and statement that Plaintiff is "unable to work" due to her "chronic medical problems" (A.R. 365-66) are unsupported by medical findings or clinical evidence.  She does not identify *what* medical problems preclude Plaintiff from working and *how* they do so, and the notes from Plaintiff's treating physicians at Kern Medical Center do not provide support for her conclusions.

16

physician's opinion unsupported by medical findings, personal observation, or test reports was properly rejected); Young v. Heckler, 803 F.2d 963, 967-68 (9th Cir. 1986)(treating physician's opinion properly rejected as conclusory and lacking adequate findings to support the opinion that claimant was totally disabled); see also Fair, 885 F.2d at 605 (ALJ may reject opinions premised upon claimant's properly discounted subjective complaints).

With respect to Plaintiff's allegation that she suffers chronic and disabling foot pain, because her left foot swells,[9] the ALJ noted Dr. Rios's opinion that Plaintiff's statement of symptoms suggested plantar fasciitis, which appeared to be clinically controlled.  The ALJ noted Dr. Rio's findings that:  Plaintiff's feet had well-defined arches and were not tender on palpation; Plaintiff was able to execute normal tandem walk and heel-toe walk; and Plaintiff exhibited no gait alteration.  (A.R. 176)  The ALJ concluded that, based on Dr. Rios's opinion, Plaintiff's claimed foot pain imposed no significant work-related limitation of function.  (A.R 17.)

Significantly, Dr. Rios's findings are not contradicted by any medical evidence of record, including the records from Plaintiff's treating physicians, and in reaching his findings, he considered the same pain allegations Plaintiff testified to at the hearing.  (A.R. 336.)  Indeed, with the exception of a single record, dated June 2000,

---

[9]    In applying for benefits, Plaintiff did not allege that she is disabled because of foot pain, instead citing only bronchitis, hepatitis C, and cirrhosis.  (A.R. 299, 308, 326, 330.)  In her prior application, Plaintiff alleged that it was her right foot, rather than her left foot, that swelled and caused her pain.  (A.R. 34.)

17

indicating that Plaintiff received a cortisone injection in the arch of her *right* foot and advice to wear an orthotic (A.R. 266), the medical records of her treating physicians are bereft of any complaint by Plaintiff of foot pain, much less chronic pain, because her *left* foot swells.   The factors cited by the ALJ in concluding that Plaintiff's assertion of an inability to work based on foot pain was not credible -- including his reliance on Dr. Rios's objective findings, which contradicted Plaintiff's hearing testimony -- were appropriate, and supported his conclusion.   *See* Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995)(reliance on a doctor's report is a valid, specific reason for rejecting subjective complaints); Johnson, 60 F.3d at 1434 (nature of alleged debilitating pain suggested that claimant would have sought medical treatment had she actually been suffering from it, but she did not; and affirming adverse credibility finding); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)(in credibility assessment, self-serving statement unsupported by objective evidence may be rejected); Fair, 885 F.2d at 603 (unexplained failure to seek treatment properly bears on a claimant's credibility); Copeland v. Bowen, 861 F.2d 536, 540-41 (9th Cir. 1988)(ALJ's rejection of claimant's credibility upheld where claimant alleged a limitation "disparate from that observed by the consultative examiner").[10]

With respect to Plaintiff's claim that her hepatitis C precludes

---

[10]    This is not an instance in which the ALJ, or this Court, could posit that Plaintiff's failure to seek treatment for her asserted foot pain might have been the result of financial hardship.   *See, e.g.,* Gamble v. Chater, 68 F.3d 319, 320-22 (9th Cir. 1995).   Plaintiff's medical records from Kern Medical Center for the pertinent period show that she was a frequent patient and received a large variety of medical treatment.

her from working because it causes her constant disabling pain in her right side, the ALJ noted that the objective medical evidence did not show any significant liver compromise, her hepatic ultrasound was within normal limits, and Plaintiff's doctors had not prescribed any significant treatment for Plaintiff's hepatitis.  The ALJ also noted Dr. Rios's opinion that Plaintiff's claimed "labor restricting complications" from her hepatitis C was not corroborated by his examination.  (A.R. 16-17.)  These reasons for finding Plaintiff not to be credible regarding her claim that her hepatitis C rendered her unable to work -- *to wit*, the disparity between her claimed limitations and the objective medical evidence, and the minimal medical treatment she had received since her diagnosis -- are valid, specific, and convincing. *See* Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)(medical evidence that contradicted claimant's assertion of severity of her symptoms properly considered as basis for finding claimant not credible); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)(upholding rejection of plaintiff's claimed symptoms when medical records addressed plaintiff's claim and found symptoms to be lacking); Johnson, 60 F.3d at 1434 (conservative nature of treatment as proper factor); Fair, 885 F.2d at 604 (minimal medical treatment as proper factor); Copeland, 861 F.2d at 540-41 (claimed limitations that were "disparate" from medical opinion properly found not credible).

Finally, Plaintiff's testimony was inconsistent in several respects, a fact the ALJ noted.[11]  (A.R. 16, noting that: Plaintiff testified she last worked during 1989-90, but later testified she was

---

[11]  The ALJ also noted Plaintiff's felony conviction for possession of heroin.

last employed in 1994-95; Plaintiff testified she can carry up to ten pounds without pain, but then testified that she cannot carry milk back from the store for two blocks.) Such inconsistencies also constitute a valid reason for making an adverse credibility determination. *See* Bunnell, 947 F.2d at 346 (ordinary techniques of credibility evaluation may be used); Fair, 885 F.2d at 604 n.5 (inconsistencies in claimant's statements may impact adversely on her credibility); Brawner, 839 F.2d at 433 (same).

Plaintiff correctly asserts that a claimant, once a relevant impairment is shown by objective medical evidence, is not required to produce additional objective medical evidence that proves the severity of pain to which the claimant testified. However, that does not mean, as Plaintiff further argues, that the Commissioner is precluded from finding that the excess pain testimony is not credible under appropriate credibility assessment standards. As the Ninth Circuit has observed frequently, once a claimant produces objective evidence of an impairment that would normally produce a certain amount of pain but asserts that she experiences a higher level of pain, the "Commissioner is free to disbelieve that testimony but must make specific findings justifying that decision." Copeland, 861 F.2d at 542. Plaintiff's "degree" argument, if correct, would render the second step of the excess pain analysis meaningless. That second step expressly contemplates that the Commissioner may reject subjective pain testimony, even when objective medical evidence shows an impairment that could cause pain or other symptoms of the type alleged. The second part of the analysis simply places a constraint on the Commissioner's ability to do so based on an adverse credibility determination by requiring ALJs to articulate

specific and convincing reasons.  The reason for such a constraint is to afford a reviewing court a basis for determining if the ALJ rejected the testimony on permissible grounds, rather than arbitrarily discredited it.  <u>Bunnell</u>, 949 F.2d at 345-46.  In this case, for the reasons set forth above, the Court finds that the ALJ's stated reasons for finding Plaintiff's testimony not wholly credible satisfied the standards set forth in Section A, and he did not arbitrarily discredit Plaintiff's testimony.  Accordingly, no basis for reversal exists due to the ALJ's credibility finding.

     As a final matter, although the parties have not raised this as an issue in this case, the Court notes that the ALJ's opinion contains an apparently inconsistent finding.  The prior unfavorable decision rendered on August 11, 2000, included a finding that Petitioner retained the residual functional capacity to perform light work.  As the ALJ noted in the present decision, that finding warranted a presumption of continuing nondisability absent "changed circumstances."  (A.R. 15.) *See, e.g.,* <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1995).  The ALJ then found "that on the basis of new and material evidence, the claimant now has the residual functional capacity for a significant range of 'medium' work," which he concluded was a "changed circumstance" that precluded application of the doctrine of res judicata to the prior unfavorable decision.  (*Id.*)  The ALJ subsequently indicated that the preponderance of the medical evidence, including Dr. Rios's opinion, supported his conclusion that Plaintiff now can perform medium work.  (A.R. 17.)  However, in his formal Findings, the ALJ stated that Plaintiff retains the residual functional capacity for light work, rather than medium work.  (A.R. 18.)

1    Any error arising from this inconsistency clearly is harmless.

2    *See, e.g.,* <u>Batson v. Commissioner of the Social Sec. Admin.</u>, 359 F.3d

3    1190, 1197 (9th Cir. 2004)(applying harmless error rule and concluding

4    that ALJ error which does not negate the validity of the ALJ's ultimate

5    conclusion is harmless and, therefore, does not warrant reversal).  This

6    inconsistency cannot detract from or negate the propriety of the ALJ's

7    credibility assessment.  Moreover, the ALJ properly could find Plaintiff

8    to be limited to light work, as the prior adverse decision established.

9    Even if the ALJ erred in finding "changed circumstances" supportive of

10    a medium work residual functional capacity finding, the net result

11    simply would be that the presumption of continuing nondisability would

12    apply due to, and the doctrine of res judicata could apply based on, the

13    prior adverse decision against Plaintiff, and the prior light work

14    finding would stand and again preclude an award of benefits.

15

16                **CONCLUSION**

17

18    For all of the foregoing reasons, the Court finds that the

19    Commissioner's decision is based on the correct application of the

20    proper legal standards, and that neither reversal of the Commissioner's

21    decision nor remand is warranted.  Accordingly, IT IS ORDERED that

22    Judgment shall be entered affirming the decision of the Commissioner.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and of the Judgment on counsel for Plaintiff and counsel for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 30, 2005

```
                              /s/
                        MARGARET A. NAGLE
                UNITED STATES MAGISTRATE JUDGE
```